UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| TOBIN H. GRIGSBY | CIVIL ACTION NO. 10-cv-0467 |
| VERSUS | JUDGE HICKS |
| HARTFORD LIFE & ACCIDENT INSURANCE CO. | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Dr. Tobin Grigsby ("Plaintiff") was employed by Regional Urology, LLC as a urologist. The practice purchased a group disability benefits policy from Hartford Life & Accident Insurance Company ("Hartford"). Plaintiff developed arthritis in his hands that he claimed made it impossible to perform his duties as a surgeon. He stopped performing surgery but continued to engage in a clinical/office practice.

Plaintiff filed a claim for disability benefits under the plan. The plan defines disabled to include when the applicant's condition prevents him from performing essential duties of his occupation and, as a result, his "current monthly earnings" are less than 80% of his pre-disability earnings. The plan defines current monthly earnings as including earnings received from (1) your employer, (2) other employment, and (3) any other work for pay or profit. The central dispute in this case is whether Dr. Grigsby's current monthly earnings (1) are limited to the reduced compensation he now receives from his office practice or (2) also include the revenue Plaintiff earned from his interest in Regional Urology Ambulatory Surgery Center, LLC and Regional Research Specialists.

A Hartford analyst, Nick Sobczak, initially awarded benefits. Another analyst, Eric Anderson, later issued a decision that reversed Hartford's position. That reversal was based in part on input from a third-party financial analyst, CPA Connie Cordamone. Plaintiff represents that Ms. Cordamone's first two calculations would have resulted in Plaintiff receiving benefits. Hartford, however, instructed Ms. Cordamone to calculate current monthly earnings by including "all sources of income" received by Plaintiff. The third calculation supported a denial of benefits.

Plaintiff appealed that decision to a Hartford Appeals Unit. He provided Hartford a report from his CPA firm that calculated his current monthly earnings without reference to distributions from the two other companies. Hartford retained CPA John Hoffman to issue a report on current monthly earnings. Mr. Hoffman determined that income received from the two other companies should be included as earned income under the policy. He pointed to how that income was reported for income tax purposes, and he reasoned that income from the two companies was connected to and contingent upon Plaintiff's work at Regional Urology and the practice of medicine. Hartford issued an appeal determination that concurred in the denial of benefits. Plaintiff filed this action to challenge Hartford's calculation of current monthly earnings.

Before the court are Hartford's motions to quash (Docs. 11 and 19) that ask the court to quash (1) written discovery requests propounded by Plaintiff and (2) the proposal that Ms. Cordamone and Mr. Hoffman be deposed.

Congress enacted ERISA to ensure that employees would receive the benefits they had earned, but Congress did not require employers to establish benefit plans for employees. Congress did seek to create a system that is not so complex that administrative costs or litigation expenses would unduly discourage employers from offering ERISA plans. Conkright v. Frommert, 130 S.Ct. 1640, 1648-49 (2010).

When a plan gives the administrator discretionary authority to construe plan terms and apply its provisions, the administrator's decision is reviewed under an abuse of discretion standard. The court applies a two-step process. First, it asks whether the administrator's determination was legally correct. If so, there is no abuse of discretion. If the court finds the administrator's interpretation was legally incorrect, the court must then determine whether the administrator's decision was an abuse of discretion. Stone v. UNOCAL Termination Allowance Plan, 570 F.3d 252, 257 (5th Cir. 2009).

When deciding whether an interpretation is legally correct, the court considers: (1) whether the administrator has given the plan a uniform construction, (2) whether the interpretation is consistent with a fair reading of the plan, and (3) any unanticipated costs resulting from different interpretations of the plan. The most important factor in the three-part analysis is whether the interpretation was consistent with a fair reading of the plan, keeping in mind that plans are interpreted in their ordinary and popular sense, as they would likely be understood by the average plan participant. Stone, 570 F.3d at 258-60.

Once the administrative record has been determined, the court may not stray from it except for limited exceptions. Those exceptions have historically been related to either interpreting the plan or explaining medical terms and procedures relating to the claim. Thus, evidence of how an administrator has interpreted terms of the plan in other instances is admissible. Evidence, including expert opinion, that assists the court in understanding the medical terminology or practice related to a claim is also admissible. Vega v. National Life Ins. Services, Inc., 188 F.3d 287, 299 (5th Cir. 1999) (en banc). Discovery outside the administrative record is permitted only where it is intended to lead to the discovery of evidence admissible within the restrictive boundaries identified in Vega. Crosby v. Blue Cross/Blue Shield, 2009 WL 1870245, *3 (E.D. La. 2009).

Plaintiff proposes to depose Ms. Cordamone and Mr. Hoffman. Counsel for Plaintiff says he wants to depose Ms. Cordamone about her communications with Hartford's claims representative, the Hartford representative's instructions to Cardamone, and Cardamone's alleged disagreement with Hartford's interpretation of current monthly earnings. Counsel reports that Ms. Cordamone told him by telephone that she had acquiesced in Hartford's insistence that she use all sources of income because, essentially, Hartford was paying her bill so she followed its instructions. Counsel says he wants to depose Mr. Hoffman as to communications between Hoffman and Hartford to determine why Hoffman resorted to the Internal Revenue Code and to explore the legal basis for Hoffman collapsing three entities into one for purposes of determining current monthly earnings. Counsel also wants to ask

why Hoffman's interpretation of current monthly earnings never mentions the word work, which is included in the relevant plan language.

None of the testimony Plaintiff seeks falls within the scope of the exceptions set out in Vega. It is not intended to assist the court in understanding medical terminology, and it does not relate to how the administrator has interpreted terms of the plan in other instances. The discovery is an attempt to question and apparently attack as unsupported the witnesses's application of the plan terms to the facts in this case. The ERISA jurisprudence does not allow for discovery of such matters. Plaintiff should direct those arguments to the court when the parties brief whether Hartford abused its discretion in making its decision. If Plaintiff demonstrates that the opinions by these two consultants were out of line or unsupported by the terms of the plan, that will be an argument that favors Plaintiff in that debate. No discovery on the issue, in what is meant to be a fairly expedient administrative process, will be allowed. Accordingly, Hartford's Motion to Quash Proposed Depositions (Doc. 19) will be granted.[1]

---

[1] Plaintiff has not directly requested discovery regarding evidence of possible bias by the consultants, although it could be implied from his statements about the discussion with Ms. Cordamone. The Fifth Circuit has rejected a claim that a reviewing physician was biased because he was employed with a contracting agency and reviewed 20 to 30 files per month for the agency, but he was not financially dependent upon the agency. Sweatman v. Commercial Union Ins. Co., 39 F.3d 594, 601 n.14 (5th Cir. 1994). See also McDonald v. Hartford Life Group Ins. Co., 361 Fed. Appx. 599, 609-10 (5th Cir. 2010) (rejecting a conclusory assertion of bias by reviewing physicians). Discovery on the issue of bias might be permissible if a proper foundation were established, but there is not an adequate foundation in this case, and a mere fishing expedition will not be allowed.

Plaintiff has also propounded interrogatories and requests for production, to which Hartford responded with its Motion to Quash (Doc. 11). Some of the challenged interrogatories ask Hartford to define terms in the plan such as earnings and work, or terms found in the reports and decisions (such as "all sources of income" or "passive income"). Plaintiff does not articulate how these requests fall within the scope of either of the two discovery exceptions, and it appears they do not. Hartford had its opportunity to include in the administrative record any definitions or discussions that it believed might be necessary or helpful to keep its decision from being deemed an abuse of discretion. Plaintiff will have the opportunity, when the merits are briefed, to suggest what he believes are the reasonable and proper interpretations of the plan terms, and he may argue that Hartford's application of the terms was unreasonable. Discovery on these issues, however, is not available.

Request for Production No. 4 asks for a copy of a sample disability contract and other documents used to assist in marketing the plan. Hartford objects that the request is outside the scope of permitted ERISA discovery, and it adds that there is no claim for misrepresentation. Allowing this discovery should place only a small burden on Hartford, and the materials are of possible relevance to how Hartford has interpreted terms of the plan in the past. There may be statements in the materials about how Hartford determines current monthly earnings. If so, that might be admissible to argue that the interpretation Hartford applied in this case was arbitrary and capricious. The court will allow this limited discovery,

and Hartford is directed to respond to Request for Production No. 4 within 20 days of the date of this order.

Request for Production No. 6 asks Hartford to produce all documents and explain or delineate the information needed by a disability specialist or appeals specialist to determine "pre-disability earnings" and "current monthly earnings" with respect to a claim. Plaintiff explains that he is asking for documentation of what the analyst looked to when determining whether an applicant has had a sufficient loss of earnings to qualify for benefits. Presumably, Plaintiff envisions a list of documents and items of information that an analyst is directed to request or gather with regard to the issue.

Hartford responds that the administrative record shows what information Hartford believed it needed in this case, and it represents that it has produced two CDs that contain indices for the claims manuals in effect at the time of Hartford's decisions. Plaintiff has not identified any particular chapter or provision in the claims manual that he believes is responsive. Considering the narrow scope of ERISA discovery and the production to this point, Hartford's objection to Request No. 6 is sustained.

Interrogatory No. 10 asks Hartford if it has used the Internal Revenue Code in connection with making a benefit determination for any other person who claims disability benefits. Plaintiff asks Hartford to identify with reasonable particularity each instance in which Hartford has used the Code in making such a determination. Hartford suggested that Plaintiff narrow the scope of the request to asking whether Hartford has used the Code in

connection with interpreting "current monthly earnings" for any other person claiming disability under the plan. Plaintiff rejects that suggestion, and he says he knows only one other person has applied for benefits under the plan, and that case did not involve this issue. Plaintiff suggests Hartford may have looked to the Code for interpretation of the term under similar policies issued to other employers or groups. Hartford responds that it would be unduly burdensome to search through its many claims, more than 38,000 in 2008 alone, because it does not "code" its claims by issue so that it could simply search a database and get the answer to the interrogatory. The court finds that Plaintiff's request is overly broad and should not be allowed in this ERISA proceeding.

For the reasons stated above, Hartford's **Motion to Quash Proposed Depositions (Doc. 19)** is **granted**. Hartford's **Motion to Quash (Doc. 11)** is **granted in part** and **denied in part** as set forth above.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 3rd day of December, 2010.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE